IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| GEORGE R. NEELY, | § | BANKRUPTCY NO. 04-44898-H5-7 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| GEORGE R. NEELY, and | § | |
| CINDY NEELY, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No. 11-03637 |
| | § | |
| JAMES M. TRIPPON, and | § | |
| J.M. TRIPPON & CO., C.P.A., | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| GEORGE R. NEELY, and | § | |
| CINDY NEELY, | § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | Civil Action No. 12-1008 |
| | § | |
| JAMES M. TRIPPON, and | § | |
| J.M. TRIPPON & CO., C.P.A., | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Appellants, George R. Neely and Cindy Neely, appeal six orders of the Bankruptcy Court entered in Adversary No. 11-03637: (1) Order Denying Plaintiffs' Amended Motion to Remand entered on March 22, 2012; (2) Order denying Cindy D. Neely's Notice of

Dismissal under FRCP 41(a) entered on March 22, 2012; (3) Order denying George R. Neely's Notice of Dismissal under FRCP 41(a) entered on March 22, 2012; (4) Order Denying Plaintiffs' Motions to Dismiss and Granting Defendants' Motion to Dismiss entered on March 22, 2012; (5) Order sanctioning appellants entered on August 29, 2012; and (6) the Final Judgment entered on September 6, 2012.[1] Pending before the court are Appellees James M. Trippon and J.M. Trippon & Company, CPA's Motion to Dismiss Appeal (Docket Entry No. 2), Amended Brief for Appellants (Docket Entry No. 27), and Brief for Appellees James M. Trippon and J.M. Trippon & Co., C.P.A., (Docket Entry No. 29).[2] For the reasons explained below, the Bankruptcy Court's Orders and Final Judgment entered in Adversary No. 11-03637 will be affirmed, and Appellees James M. Trippon and J.M. Trippon & Company, CPA's Motion to Dismiss Appeal (Docket Entry No. 2) will be denied as moot.

---

[1]Amended Notice of Appeal, Docket Entry No. 16, and Exhibits A-F attached thereto.  See also Order Denying Plaintiffs' Amended Motion to Remand, Docket Entry Nos. 8-16 and 26-1; Order denying Cindy D. Neely's Notice of Dismissal, Docket Entry Nos. 8-17 and 26-2; Order denying George R. Neely's Notice of Dismissal, Docket Entry Nos. 8-18 and 26-3; Order Denying Plaintiffs' Motions to Dismiss and Granting Defendants' Motion to Dismiss, Docket Entry Nos. 8-20 and 26-4; Order awarding sanctions, Docket Entry Nos. 23-10 and 26-5; and Final Judgment, Docket Entry Nos. 23-11 and 26-6.

[2]Several designations of record have been filed, i.e., Docket Entry Numbers 8, 22, 23, and 26.  Page citations to the bankruptcy court documents included in these filings are to the pagination imprinted by the federal court's electronic filing system at the top and right of the document.  Page citations to the parties' briefs are to the native page numbers at the bottom of the page.

## I.   <u>Factual and Procedural Background</u>

James Trippon and his company, Trippon & Company (collectively "Trippon") performed tax accounting services for George R. Neely (Neely) from approximately 1990 to approximately 2004, and for Cindy D. Neely from approximately 1998 when she married George to approximately 2004.[3]  On October 19, 2004, Neely filed a voluntary petition under Chapter 7 of the Bankruptcy Code, Case No. 04-44898.

On October 14, 2005, the Internal Revenue Service (IRS) filed a Proof of Claim in the amount of $343,193.98 in Neely's bankruptcy.[4]  Attached to the Proof of Claim was a schedule of the tax deficiencies and the dates the taxes were assessed.[5]

On October 10, 2008, the Bankruptcy Court denied George Neely a discharge under 11 U.S.C. § 727, after ordering that "the judgments in favor of the Commission for Lawyer Discipline against George R. Neely are not discharged pursuant to 11 U.S.C. § 532(a)(7)."[6]

On November 21, 2008, George Neely sued the IRS in Adversary Number 08-03456 styled <u>George Nelly v. Internal Revenue Service</u>,

---

[3]<u>See</u> Plaintiffs' Original Petition in 2011-75043 filed in 151st Judicial District Court of Harris County, Texas, Docket Entry Nos. 8-5 and 22-23 at p. 2.

[4]Docket Entry No. 22-24.

[5]<u>Id.</u> at 2-3.

[6]Final Judgment entered in Bankruptcy Case No. 04-44989-H5-7 (Docket Entry No. 327), and Adversary No. 05-3503 (Docket Entry No. 104).

("IRS Litigation") seeking declaratory judgment that tax liabilities that he had scheduled in a previous bankruptcy filed in Victoria, Texas, in 1996, (Bankruptcy No. 96-20413), had been discharged.[7] On July 30, 2009, the Bankruptcy Court granted the IRS's motion for summary judgment and held that tax liabilities for which the IRS had filed proof of claim in Neely's 2004 bankruptcy had not been discharged in Neely's 1996 bankruptcy:

> The United States Motion for Summary Judgment is **GRANTED**. Plaintiff's Form 1040 income tax liabilities for tax years 1990-1997 and 2003, his Form 941 tax liabilities for the tax period ending September 30, 1996 through the period ending December 31, 1997, the period ending March 31, 1999 through the period ending December 31, 2001 and the periods ending June 30, 2002, September 30, 2002, September 30, 2003 and December 31, 2003 and plaintiff's Form 940 FUTA liabilities for the tax years ending December 31, 1998, December 31, 2000, December 31, 2001, December 31, 2003 and December 31, 2004 were not discharged in Bankruptcy No. 96-20413. Plaintiff's Motion for Summary Judgment is **DENIED**.[8]

On December 15, 2009, the District Court dismissed Neely's appeal of the Bankruptcy Court's grant of summary judgment to the IRS.[9]

On June 18, 2010, Neely sent Trippon a letter stating:

---

[7]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 3. <u>See also</u> Debtor's Amended Complaint Seeking Dischargeability Determination and Amount, If Any, Due identifying the purpose of the suit as the dischargeability of tax claims, Docket Entry No. 8-24, pp. 21-36.

[8]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 3. <u>See also</u> Summary Judgment entered in Adversary No. 08-03456, Docket Entry No. 8-22.

[9]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 3. <u>See also</u> Dismissal Order, Docket Entry No. 7 entered in Civil Action No. H-09-2665.

Please consider this as my demand that you submit my claim against you for malpractice to your E&O insurance carrier. My claim arises in connection with your preparation of several income tax returns and the filing of same and advising me and my bankruptcy attorney that the tax returns had been on file the required period of time so as to discharge the taxes, penalties and interest due in connection with the income tax returns in a Chapter 7 bankruptcy proceeding filed by me in Victoria, Texas in approximately 1997. For several years after the Chapter 7 Discharge order received by me from the Victoria Bankruptcy Court you continued to advise me in connection with my financial affairs that the income taxes scheduled in the 1997 bankruptcy case in Victoria, Texas, were no longer owed by me.

I again conferred with you in October of 2004 in connection with you and Bill Carr regarding my financial situation, at which time both you and he advised me to file another Chapter 7 Bankruptcy proceeding. I did so and eventually filed an adversary against the IRS to confirm the discharge of approximately $300,000.00 in taxes, penalty and interest for the years covered in the 1997 Victoria, Texas Bankruptcy proceeding. The Bankruptcy Court in Houston, Texas entered a Summary Judgment that the 1997 bankruptcy case filed by me in Victoria, Texas did not discharge the taxes, interest and penalties you were retained to handle because the income tax returns were not on file the required period of time to effect a discharge of the taxes, penalties and interest owed in connection therewith. I am enclosing a copy of the Summary Judgment for your edification. Instead, I now owe the taxes, penalties and interest that were not discharged as well as any penalty and interest owed thereon since the filing of the 1997 Victoria Bankruptcy proceeding.

I hereby demand that you submit my claim for $2,500,000.00 to your malpractice insurance carrier. But for your negligence in the handling of the Victoria Bankruptcy income tax matters, and your subsequent advice, I would not have needed to file the 2004 Bankruptcy proceeding as you and Bill Car advised me to do and would not have experienced the severe financial losses as a proximate result thereof. My wife, Cindy, may be sending you her own demand letter as a result of

5

her losses proximately caused by your negligence in the handling both of our affairs.[10]

On July 1, 2010, Richard White, an attorney hired by Trippon's insurer to represent Trippon and his company, sent a response to Neely's demand letter asserting, _inter alia_, that Neely's malpractice claims were not only time barred, but also assets of Neely's bankruptcy estate that Neely had not standing to bring.[11]

On December 14, 2011, Appellants filed Cause No. 2011-75043 styled George D. Neely and Cindy Neely vs. James M. Trippon, J.M. Trippon & Co., CPA's and Bill Carr, in the 151st Judicial District Court of Harris County, Texas, (the "removed state court action") against Trippon, Trippon & Company, CPA's, and Bill Carr alleging claims for negligence arising from allegations that Appellees had committed accounting malpractice by giving them advice regarding the dischargeability of George's taxes in the 1996 bankruptcy.[12]

On December 20, 2011, citing 28 U.S.C. §§ 157(a), 1334(b), and 1452(a), Trippon removed Civil Action No. 2011-75043 from state court to the Bankruptcy Court administering Neely's Chapter 7 case asserting:

---

[10]Docket Entry No. 8-24, pp. 4-5.

[11]Docket Entry No. 23-5, pp. 6-8.

[12]Plaintiffs' Original Petition, filed in Civil Action No. 2011-75043 in the 151st Judicial District Court of Harris County, Texas ("Plaintiff's Original Petition"), Docket Entry No. 8-5.

1.   On October 19, 2004 the above named debtor, George
R. Neely ("Neely") [filed] a petition seeking relief
under Chapter 13 of the Bankruptcy Code. . . .  The
bankruptcy is still ongoing in the United States
Bankruptcy Court for the Southern District of Texas,
Houston Division.[13]

2.   On December 14, 2011, Neely filed suit in the Cause
No. 2011-75043; styled *George R. Neely and Cindy D. Neely
vs. James M. Trippon, J.M. Trippon & Company, C.P.A.'s
and Bill Carr*, in 15[1]st Judicial District Court of
Harris County, Texas . . . alleging breach of fiduciary
duty among other claims.[14]  Neely alleges actions taken
by Defendants as Debtor's personal accountants caused he
and his wife damages.

3.   The State Court Lawsuit, including all claims and
causes of action asserted therein, is a civil action
other than a proceeding before the United States Tax
Court; and it is not a civil action by a governmental
unit to enforce such governmental unit's police or
regulatory power.  The State Court Lawsuit is a civil
proceeding related to the Bankruptcy Case.  All cause[s]
of action alleged by Neely against Trippon occurred pre
bankruptcy filing; therefore would be property of the
Bankruptcy estate.  Neely failed to list any of these
claims in his bankruptcy schedules so they would be
disclosed to the Chapter 7 Trustee.  The Bankruptcy Court
presiding over the Bankruptcy Case, pursuant to the
general reference with respect to Title 11 cases in the
Southern District of Texas and 28 U.S.C. § 157, has
jurisdiction of each and every cause of action asserted
in the State Court Action under 28 U.S.C. § 1334(b).

---

[13] The statement that Neely filed a Chapter 13 petition is a
mistake; Neely filed a Chapter 7 petition.  See Docket Entry No. 1
in Bankruptcy Case No. 04-44898-H5-7.

[14] As the Bankruptcy Court correctly stated, Appellant's State
Court lawsuit alleged that "Trippon was negligent in the course of
rendition of services to Neely by failing to accurately calculate
the date for the discharge of tax debt in bankruptcy and advising
that Neely's bankruptcy retention should be filed."  Order of
August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket
Entry No. 16, p. 2.  See § III.A.2(a), below.

4.   The State Court Lawsuit is, on its face, a core
proceeding that deals with issues intrinsic to the
bankruptcy.   Neely alleges that Defendants actions in
advising him on the timing of the filing of his
bankruptcy caused him financial losses.   These causes of
action belong to the Chapter 7 Bankruptcy Trustee and not
to Neely.

5.   Upon removal, all such proceedings are core
proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (C),
(E), and (O).[15]

On December 22, 2011, Appellants filed individual notices of

dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1).[16]

On January 6, 2012, Appellees moved the Bankruptcy Court to

dismiss the claims asserted against them in the removed state court

action based on arguments that the negligence claims belonged to

Neely's bankruptcy estate, Appellants lacked standing to assert the

negligence claims, and the negligence claims were time barred.[17]

Asserting that Neely had brought a frivolous pleading in state

court merely to circumvent the jurisdiction of the Bankruptcy

Court, Appellees also asked the court to enjoin Appellants from

---

[15]Notice of Removal, Docket Entry No. 8-3, pp. 1-2 ¶¶1-5.

[16]Plaintiff Cindy D. Neely's Notice of Dismissal, Docket Entry
No. 8-6, and Plaintiff George R. Neely's Notice of Dismissal,
Docket Entry No. 8-8.

[17]Defendants James M. Trippon and J.M. Trippon & Company, CPA's
Motion to Dismiss Pursuant to Bankr. R. 7012(b), and Fed. R. Civ.
P. 12(b) Objections to George Neely's and Cindy Neely's Motion to
Dismiss and Motion for Permanent Injunction and for Sanctions,
Docket Entry No. 8-10, p. 4 ¶11.

filing any claims against them that accrued before 2007, and to sanction Appellants.[18]

On January 18, 2012, Appellants filed a Motion to Remand,[19] which they amended on January 23, 2012.[20]

On March 22, 2012, the Bankruptcy Court conducted an evidentiary hearing on the pending motions, i.e., Appellants' motions to dismiss and amended motion to remand, and Appellees' motion to dismiss.[21]   At the conclusion of the hearing the Bankruptcy Court denied Appellants' motions to dismiss and amended motion to remand, and granted Appellees' motion to dismiss.[22]   The Bankruptcy Court also enjoined Neely from filing future pleadings against Appellees, stated that an order would be entered directing Neely to show cause as to why he should not be enjoined from any future filings against property of the estate and its creditors

_____

[18]Id. at 7-8 ¶¶ 27-30.

[19]Plaintiffs' Motion to Remand, Docket Entry No. 8-11.

[20]Plaintiffs' Amended Motion to Remand, Docket Entry No. 8-13.

[21]Transcript of March 22, 2012, hearing, Docket Entry Nos. 8-27 and 22-6.

[22]Amended Notice of Appeal, Docket Entry No. 16, and Exhibits A-D attached thereto.   See also Order Denying Plaintiffs' Amended Motion to Remand, Docket Entry Nos. 8-16 and 26-1; Order denying Cindy D. Neely's Notice of Dismissal, Docket Entry Nos. 8-17 and 26-2, Order denying George R. Neely's Notice of Dismissal, Docket Entry Nos. 8-18 and 26-3, and Order Denying Plaintiffs' Motions to Dismiss and Granting Defendants' Motion to Dismiss, Docket Entry Nos. 8-20 and 26-4.

without leave of court, and retained jurisdiction to hear Appellees' motion for sanctions at another time.[23]

On March 24, 2012, the Chapter 7 Trustee filed his Notice of Intent to Abandon Property which included the negligence claims asserted in the removed state court action.[24]

On March 30, 2012, Appellants filed a Notice of Appeal from the orders entered by the Bankruptcy Court on March 22, 2012,[25] and on April 2, 2012, their appeal was assigned to this court.[26]

On April 17, 2012, Appellants filed a second Amended Motion to Remand.[27]

On April 30, 2012, the Bankruptcy Court entered a Show Cause Order directing Appellees to file an application for attorney fees by June 6, 2012, and setting a hearing for June 20, 2012.[28]

_____

[23]Order Denying Plaintiffs' Motions to Dismiss and Granting Defendants' Motion to Dismiss, Exhibit D to Amended Notice of Appeal, Docket Entry No. 16.  See also Record Nos. 8-20 and 26-4.

[24]Docket Entry No. 481 and Exhibit A attached thereto filed in Bankruptcy Case No. 04-44898-H3-07.

[25]Docket Entry No. 29 in Docket Report for Adversary No. 11-03637, Docket Entry No. 8-1.

[26]Docket Entry No. 32 in Docket Report for Adversary No. 11-03637, Docket Entry No. 8-1.

[27]Docket Entry No. 36 in Docket Report for Adversary No. 11-03637, Docket Entry No. 8-1.

[28]Order to Show Cause, Docket Entry No. 23-1.

On June 8, 2012, Appellants filed a Supplement to Amended Motion to Remand in which they again moved the court to remand their negligence claims against Appellees to state court.[29]

On June 20, 2012, the Bankruptcy Court held the show cause hearing,[30] and on August 29, 2012, the Bankruptcy Court entered an Order setting forth its findings.[31]  After rejecting Appellants' argument that the Trustee's Notice of Abandonment filed on March 24, 2012, deprived it of jurisdiction,[32] the Bankruptcy Court found that (1) the lawsuit Appellants filed against Appellees on December 14, 2011, for negligence arising from allegations of accounting malpractice was barred by the applicable statute of limitations;[33] (2) Appellants were judicially estopped from pursuing their malpractice claims against Appellees;[34] and (3) Appellants' Post Dismissal Motion to Remand was moot.[35]  The Bankruptcy Court also found that good causes existed under Tex. R. Civ. P. 13 to

---

[29]Plaintiffs' Supplement to Amended Motion to Remand, Docket Entry No. 23-3.

[30]Transcript of June 20, 2012, Show Cause Hearing, Docket Entry Nos. 23-9 and 29-2.

[31]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16.  See also Order, Docket Entry Nos. 23-10 and 26-5.

[32]Id. at 5-6.

[33]Id. at 3-4.

[34]Id. at 5-6.

[35]Id. at 6.

sanction George Neely by ordering him to pay attorneys' fees in the amount of $14,763.00 to Appellees for services provided by Richard White, and $12,940.00 to Mynde Eisen, Appeelee's counsel.[36]

On September 6, 2012, the Bankruptcy Court entered the Final Judgment from which Appellants now appeal.[37]

On September 7, 2012, Appellants filed their Amended Notice of Appeal (Docket Entry No. 16).

## II.  **Standard of Review**

A district court has jurisdiction to hear an appeal from a bankruptcy court's final judgment or order.  28 U.S.C. § 158(a)(1). The Bankruptcy Court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013.  The Bankruptcy Court's conclusions of law and conclusions on mixed questions of law and fact and application of law to the facts are reviewed de novo.  In re Bass Corp., 171 F.3d 1016, 1021 (5th Cir. 1999).

---

[36]Id. at 11 and 15.

[37]Final Judgment, Exhibit F to Amended Notice of Appeal, Docket Entry No. 16.  See also Final Judgment, Docket Entry Nos. 23-11 and 26-6.

### III.   Analysis

Appellants argue that the Bankruptcy Court erred by (1) denying their initial and amended motions to remand; (2) dismissing the claims asserted in the removed state court action with prejudice; (3) denying their second amended and supplemental motions to remand; and (4) sanctioning George Neely.

**A.   The Bankruptcy Court Did Not Err by Denying Initial Motions to Remand**

Asserting that the Bankruptcy Court lacked jurisdiction over the removed state court action, Appellants argue that the Bankruptcy Court erred by denying their initial motion to remand because the negligence claims asserted in the removed state court action were not core proceedings and were not related to Neely's bankruptcy estate, were not property of Neely's bankruptcy estate, and involved claims of non-debtor, Cindy Neely.

**1.   The Bankruptcy Court Did Not Err by Exercising Jurisdiction Over the Removed State Court Action**

In the Order issued on August 29, 2012, the Bankruptcy Court stated: "This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.   This is a core proceeding."[38] Appellants argue that the Bankruptcy Court erred by denying their

---

[38]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 2.   See also Order, Docket Entry Nos. 23-20 and 26-5, p. 2.

initial motion to remand because the claims alleged in their state court action were not removable because they were not core proceedings and were not related to Neely's open bankruptcy case.[39] Citing 28 U.S.C. § 1334(e)(1), Appellees argue that the Bankruptcy Court possessed subject matter jurisdiction to hear the removed action and all motions filed therein because "[t]he State Court Litigation's causes of action were property of the bankruptcy estate.  Actions relating to or concerning property of the estate are core proceedings since assets of the Bankruptcy estate must be administered by the Bankruptcy Court."[40]  The question of whether the Bankruptcy Court erred by exercising subject matter jurisdiction over the removed action is a question of law that the court reviews de novo.  See In re U.S. Brass Corp., 301 F.3d 296, 303 (5th Cir. 2002); In re Bass, 171 F.3d at 1021.

     (a)  Applicable Law

28 U.S.C. § 1452(a) provides for removal to a federal district court of claims related to bankruptcy cases, if the district court has jurisdiction based on 28 U.S.C. § 1334.  Section 1334 provides District courts bankruptcy jurisdiction over four types of matters: (1) cases under title 11; (2) proceedings "arising under" title 11;

---

[39]Amended Brief for Appellants, Docket Entry No. 27, pp. 15-18.

[40]Brief for Appellees James M. Trippon and J.M. Trippon & Co., CPA's, Docket Entry No. 29, p. 14.

(3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. <u>See</u> 28 U.S.C. § 1334. The first category refers to the bankruptcy petition itself, which was not at issue. <u>See</u> <u>In re Wood</u>, 825 F.2d 90, 92 (5th Cir. 1987). As to the remaining three categories, the Fifth Circuit has determined that for purposes of removal it is unnecessary to distinguish among the three as long as the matter is at least "related to" the bankruptcy. The Fifth Circuit reasoned that these three "references operate conjunctively to define the scope of jurisdiction." <u>Id.</u> at 93. "Federal courts have 'related to' subject matter jurisdiction over litigation arising from a bankruptcy case if the 'proceeding could conceivably affect the estate being administered in bankruptcy.'" <u>Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC</u>, 594 F.3d 383, 386 (5th Cir. 2010) (quoting <u>In re TXNB Internal Case</u>, 483 F.3d 292, 298 (5th Cir.), <u>cert. denied</u>, 128 S.Ct. 613 (2007)). More specifically, "'[r]elated to' jurisdiction includes any litigation where the 'outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.'" <u>Id.</u>

(b) Application of the Law to the Facts

Appellants argue that the Bankruptcy court did not have subject matter jurisdiction over the claims asserted in the removed

state court action because those claims were not core proceedings since they were "predicated on state law claims of negligence, and have nothing to do with the Bankruptcy Code."[41]  Appellants argue that the claims asserted in the removed state court action are not related to Neely's bankruptcy estate because

> the taxes which are subject of the claims against Appellees are not being paid by the estate and do not have any affect on the administration of the bankruptcy estate, but do have a direct impact on Appellants, in that since the subject taxes were not discharged in Bankruptcy Case No. 96-20413, as represented by Appellees, Appellants will now be required to pay same to the IRS.[42]

In support of this argument Appellants cite a number of cases in which claims based on state law were filed in state court, removed to bankruptcy court, and then remanded to state court on equitable grounds. See e.g., McCratic v. Bristol-Meyers Squibb and Co., 183 B.R. 113 (N.D. Tex. 1995), and In re Merry-Go-Round Enterprises, Inc., 222 B.R. 254 (D.Md. 1998).

Appellants' argument that the claims asserted in the removed state court action were not related to Neely's bankruptcy case has no merit because Neely's 2004 bankruptcy case was undisputedly open when on December 14, 2011, the removed action was filed in state court, and for the reasons stated in § III.A.2, below, the court concludes that the Bankruptcy Court did not err by finding that the

---

[41]Amended Brief for Appellants, Docket Entry No. 27, p. 16.

[42]Id. at 17-18.

negligence claims asserted in the removed action belonged to Neely's bankruptcy estate. Therefore, if Appellants were to prevail on those claims, the claims could conceivably have enriched Neely's bankruptcy estate and impacted the allocation of property among his creditors. Accordingly, the claims asserted in the removed action were at least "related to" Neely's bankruptcy case. See Lone Star Fund, 594 F.3d at 386. The cases that Appellants cite in support of their argument that the Bankruptcy Court erred by denying their motions to remand are inapposite because they are cases that concern permissive remand under 28 U.S.C. § 1452(b) which allows courts to remand claims "on any equitable ground," and/or abstention under 28 U.S.C. § 1334(c). Appellants made no attempt before the Bankruptcy Court or before this court to show that factors courts consider in deciding motions to remand for their reasons warranted remand in this case.

Nor did the Bankruptcy Court err by stating, "[t]his is a core proceeding,"[43] because Neely, as a Chapter 7 debtor, was under a continuing duty to disclose claims that belonged to his bankruptcy estate, see 11 U.S.C. § 521(a)(1)(B)(1) and Kane v. National Union Fire Ins. Co., 535 F.3d 380, 384-85 (5th Cir. 2008), and standing to assert those claims lay exclusively with Neely's trustee. See 11 U.S.C. § 323. See also In re Seven Seas Petroleum, Inc., 522

---

[43]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 1.

F.3d 575, 584 (5th Cir. 2008).  Proceedings to determine whether a cause of action is an asset of a bankruptcy estate that the debtor should have disclosed are core proceedings over which Bankruptcy Courts have jurisdiction because they can arise only in the context of bankruptcy cases.  See 28 U.S.C. § 157(b)(2); In re Adams, 481 B.R. 854, 856 (Bkrtcy. N.D. Miss. 2012)(finding that question of whether a state law claim that was "clearly a non-core proceeding" should have been disclosed as an asset of the debtor's bankruptcy estate was a core proceeding under 28 U.S.C. § 157(b)(2)(A),(E), and (O)).[44]

        2.    The Bankruptcy Court Did Not Err by Finding that the
              Claims Alleged in Removed State Court Action Belonged to
              Neely's Bankruptcy Estate

        In the August 29, 2012, Order the Bankruptcy Court found that the negligence claims asserted in the removed state court action belonged to Neely's bankruptcy estate because they arose before Neely filed his Chapter 7 petition on October 19, 2004:

>     Neely testified that he did not schedule the cause of
>     action against Trippon because it was not property of the
>     bankruptcy estate.   However, the evidence shows that
>     Neely's alleged cause of action arose prepetition, as it
>     is based on Trippon's alleged failure to correctly advise
>     Neely of the proper date to file his [1996] bankruptcy
>     petition.   The Court finds that the alleged cause of

---

        [44]None of the parties have raised any concerns about the applicability of the United States Supreme Court decision in Stern v. Marshall, 131 S.Ct. 2594 (2011).

action was property of the bankruptcy estate because it arose prepetition.[45]

Appellants argue that the Bankruptcy Court's finding that the negligence claims asserted in the removed state court action were property of Neely's bankruptcy estate was in error because, "[i]t was not until about April of 2010 that George discovered through a telephone conversation with Carr, that Carr and Trippon knew that the taxes scheduled in Bankruptcy No. 96-20413 were not discharged because Trippon and Company had miscalculated the dates applicable to such."[46]   Appellants argue that pursuant to the discovery rule recognized by Texas law, "their claims against Appellees did not accrue until April 2010, at the earliest, [and therefore], they did not exist at the filing of the bankruptcy petition by George in October 2004."[47]   The question of whether the negligence claims asserted in the removed action were property of Appellants or property of Neely's bankruptcy estate requires interpretation and application of 11 U.S.C. § 541 and is, therefore, a question of law that the court reviews de novo. See In re Seven Seas, 522 F.3d at 583 ("Whether a specific cause of action belongs to a bankruptcy estate is . . . a matter of law that we decide by reference to the facial allegations in the complaint.").

---

[45]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 3.

[46]Amended Brief for Appellants, Docket Entry No. 27, p. 14.

[47]Id. at 15.

(a)   Applicable Law

Filing a petition in bankruptcy commences a case and creates an estate.   11 U.S.C. § 541(a).   See also In re Swift, 129 F.3d 792, 795 (5th Cir. 1997).   The estate in bankruptcy is comprised of all the property listed under § 541(a) including "all legal or equitable interests of the debtor in property as of the commencement of the case."   11 U.S.C. § 541(a)(1).   "The phrase 'all legal or equitable interests of the debtor in property' has been construed broadly, and includes 'rights of action' such as claims based on state or federal law."   In re Seven Seas, 522 F.3d at 584. A debtor's rights in property, such as a cause of action, are determined according to applicable state law.   In re Swift, 129 F.3d at 795 (citing Butner v. United States, 99 S.Ct. 914, 918 (1979) ("Property interests are created and defined by state law.")).   See also Douglas v. Delp, 987 S.W.2d 879, 883 (Tex. 1999) ("Courts look to state law to characterize the property rights in the assets of a bankrupt's estate.").   The parties do not dispute that Texas law governs the state-law claims at issue.

Under Texas law "whenever one person may sue another person a cause of action has accrued."   In re Swift, 129 F.3d at 795 (citing Luling Oil & Gas Co. v. Humble Oil & Refining Co., 191 S.W.2d 716, 721 (Tex. 1946)).   "Generally, accrual occurs on the date 'the

plaintiff first becomes entitled to sue the defendant based upon a legal wrong attributed to the latter,' even if the plaintiff is unaware of the injury." Vaught v. Showa Denko K.K., 107 F.3d 1137, 1140 (5th Cir.), cert. denied, 118 S.Ct. 67 (1997) (quoting Zidell v. Bird, 692 S.W.2d 550, 554 (Tex.App.-Austin 1985, no writ)). See also S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996)("a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred").

The claims that Appellants asserted against Appellees in the removed state court action are claims for negligence arising from professional malpractice. "A claim for professional malpractice is based in negligence." Deloitte & Touche v. Weller, 976 S.W.2d 212, 215 (Tex. App.—Amarillo 1998, pet. denied), cert. denied, 119 S.Ct. 1765 (1999) (citing Cosgrove v. Grimes, 774 S.W.2d 662, 664 (Tex. 1989)). In order to state a negligence claim under Texas law, a plaintiff must allege (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. Greater Houston Transportation Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). The threshold inquiry in any negligence case is duty. Id. Whether a legal duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question. Id. "Because actual injury is an element of a negligence claim, '[a]n action for

21

negligence cannot be maintained unless some damages result
therefrom.'" Deloitte & Touche, 976 S.W.2d at 215 (quoting Johnson
v. Sovereign Camp, W.O.W., 83 S.W.2d 605, 608 (Tex. 1935), rev'd in
part on other grounds, Doctors Hospital Facilities v. Fifth Court
of Appeals, 750 S.W.2d 177 (Tex. 1988)).  "It has also been the
rule that a cause of action only accrues when facts come into
existence supporting each element of the tort." Id. (citing Murray
v. San Jacinto Agency, Inc., 800 S.W.2d 826, 828 (Tex. 1990)).

> (b)   Application of the Law to the Facts

> **(1)   Date Neely Discovered Alleged Negligence Is
>         Not Relevant For Determining When Cause of
>         Action Accrued for Purposes of § 541(a)**

Appellants argue that the malpractice claims alleged in the
removed action were not assets of Neely's bankruptcy estate because
Neely did not discover that Trippon had negligently miscalculated
the date for filing his 1996 bankruptcy petition until April of
2010 when Carr disclosed the miscalculation to him during a
telephone conversation.  This argument is foreclosed by the Fifth
Circuit's decision in In re Swift, 129 F.3d at 792.  In that case
the Fifth Circuit stated that "[d]iscovery is relevant to the
determination of when the statute of limitations begins to run, but
it is not an element necessary for the cause of action to accrue
for purposes beyond the statute of limitation." Id. at 798.  The
Fifth Circuit explained that where, as here, the court is

> determining when the causes of action accrued for
> purposes of ownership in a bankruptcy proceeding[, t]he
> time of discovery of the injury is not relevant to this
> inquiry.  A cause of action can accrue for ownership
> purposes before the statute of limitations for that cause
> of action has begun to run.  Our focus, then, is upon the
> moment the injury occurred.

Id.  The Fifth Circuit acknowledged that the question of when a

cause of action accrues under Texas law is often confused with the

question of when the statute of limitations begins to run.  The

Fifth Circuit explained that

> [t]he basic problem is that the issue of accrual of a
> cause of action rarely occurs apart from the issue of
> when the statute of limitations begins to run for a
> particular cause of action.  These are two separate and
> distinct issues aimed at very different problems.
>
> The accrual of a cause of action is a concept
> closely tied to the fundamental purpose of a cause of
> action — to make an injured party whole.  Damages, then,
> are a prerequisite to a cause of action.  Without
> damages, there is no injury to remedy.
>
> The purpose of statutes of limitation is different:
> they bar the litigation of stale claims at a time removed
> from when the pertinent events occurred.  The concept of
> accrual is important to the statute of limitations
> because accrual sets the clock in motion.  But the
> running of the statute of limitations is influenced by
> more than just the concept of accrual.  In this
> connection, to avoid harsh and unfair consequences that
> may result from the premature running of the statute of
> limitations, Texas adopted the "discovery" rule.  Under
> this rule, the statute of limitations does not begin to
> run until the injured party "discovers" or with exercise
> of reasonable care and diligence should have discovered
> that a particular injury has occurred.  The result is
> that the statute of limitations may begin to run on a
> date other than that on which the suit could first be
> maintained.  A classic example illustrates this.
> Consider a case of medical malpractice in which the
> treating physician has left a dangerous metal instrument
> inside the body of his patient.  At the time the doctor

finishes the surgery, the doctor has completed a tort.
He has violated a legal duty owed to the patient, and the
patient was injured by that violation.  If the patient
instituted suit at this moment, his suit would be viable.
The statute of limitations has not begun to run, however.
Under the discovery rule, the statute of limitations is
tolled until the patient either discovers or should have
discovered that an injury has occurred.  This example
shows that the dates of accrual and the start of the
running of the statute of limitations may vary greatly.
Unfortunately, many cases applying the principles of the
discovery rule are written in terms of accrual.

Id. at 796.

Thus, although discovery of a legal injury is relevant to
determination of when the statute of limitations begins to run,
discovery of a legal injury is not relevant to determination of
when a cause of action accrues for purposes of determining if a
cause of action is property of a bankruptcy estate under § 541(a).
Id.  In the latter situation, "the focus . . . is upon the moment
the injury occurred."   Id. at 798.   Accordingly, Appellants'
argument that the negligence claims alleged in the removed action
are not assets of Neely's bankruptcy estate because those claims
did not accrue until April of 2010 when Neely contends he
discovered that Trippon negligently miscalculated the date for
filing his 1996 bankruptcy has no merit because the date that Neely
discovered the alleged negligence is not relevant for determining
whether he possessed a property interest in those claims when he
commenced his bankruptcy case on October 19, 2004.

24

### (2)   Negligence Claims Accrued for Purposes of § 541(a) Before Neely Filed Bankruptcy in 2004

Appellants argued to the Bankruptcy Court that the negligence claims asserted in the removed action did not belong to Neely's 2004 bankruptcy estate because Neely's liability for taxes that were scheduled but not discharged in his 1996 bankruptcy did not become final until December 14, 2009, when the district court dismissed the adversary proceeding that Neely filed seeking declaratory judgment that the taxes had been discharged in his 1996 bankruptcy.[48]   Appellants argued that Neely suffered no legally cognizable injury until long after his bankruptcy case commenced on October 19, 2004.[49]

Under Texas law, the question of when a plaintiff has suffered a legally-cognizable injury depends on the acts complained of:

> If the act is of itself not unlawful in th[e sense of constituting legally cognizable injury in and of itself], . . . and plaintiff sues to recover damages subsequently accruing from, and consequent on, the act, the cause of action accrues, and the statute begins to run, when, and only when, the damages are sustained; and this is true although at the time the act is done it is apparent that injury will inevitably result.
>
> If, however, the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the tort.

---

[48]Id. at 21 and 24.

[49]Id. at 19.

25

In re Swift, 129 F.3d at 797 (quoting Atkins v. Crosland, 417
S.W.2d 150 (Tex.1967)).   In Atkins, 417 S.W.2d at 153, the Texas
Supreme Court held that a malpractice action against an accountant
for negligent preparation of tax returns did not accrue until the
IRS assessed a tax deficiency because the act complained of — the
accountant's use of the cash method, as opposed to the accrual
method, of accounting — was not in itself an act that caused legal
injury absent some additional act.   The Court explained that the
subsequent assessment of a tax-deficiency constituted the legal
injury that provided the plaintiff the right to sue.   Id.   The
Fifth Circuit found the facts at issue in Atkins distinguishable
from those at issue in Swift.   In re Swift, 129 F.3d at 798-801.

    In Swift the debtor was an insurance agent who participated in
a Keogh retirement plan administered by State Farm.   In 1986
Congress substantially revised the federal tax code, but as of
February 1990, State Farm had not amended its Keogh plan to comply
with the revisions.   In February of 1990 Swift contemplated filing
bankruptcy, but fearing that his Keogh plan would not qualify as
exempt property, he converted his Keogh plan into a self-directed
Individual Retirement Account (IRA).   On March 1, 1990, Swift filed
a voluntary petition under Chapter 7, and asserted that his IRA was
exempt.   Two creditors objected.   The bankruptcy court found the
IRA was not exempt and was, therefore, part of Swift's estate
available for distribution to his creditors.   In re Swift, 129 F.3d

at 794.  Swift filed suit against State Farm in state court
alleging that State Farm was liable for the lost exemption for his
IRA under theories of negligence and breach of fiduciary duty.  Id.
at 795.  Reasoning that Swift suffered at least one set of damages
consisting of lost tax advantages at the moment he converted his
Keogh retirement plan to the defective IRA, the Fifth Circuit held
that "Swift suffered damage sufficient to give rise to the current
causes of action at the time he converted his Keogh plan to an IRA
in 1990."  Id. at 798.  The Fifth Circuit explained that the
irreversible harm element of the claims against State Farm occurred
pre-petition because

> [d]amages can also arise from acts of negligence that
> result in the taxpayer owing additional tax liabilities
> that would not be owed in the absence of the negligence.
> No assessment for this liability is necessary because,
> under the Internal Revenue code, taxes are owed and
> payable to the IRS at a given time.  A cause of action
> for this type of negligence, then, accrues on the date
> that the tax liability is owned to the IRS.  The present
> case falls in this category.  But for the negligence of
> State Farm, Swift would have no tax liability arising
> from his retirement plan.  That is, without the
> negligence of State Farm, the gains on Swift's Keogh plan
> and the IRA would accumulate tax free, and Swift's
> contributions to the plan would be tax deductible.
> Because the Keogh plan was defective, however, Swift
> incurred an additional liability to the IRS due to the
> taxable nature of the income from the Keogh plan and the
> IRA.  Swift incurred this liability even if he did not
> know or discover that he owned additional taxes.  This
> is a legal injury that gave rise to a cause of action at
> least by the time he converted his Keogh plan into the
> defective IRA.  Even though the IRS has not assessed a
> deficiency for this liability, Swift was injured.  We
> shall not find a lack of injury merely because the
> taxpayer may be able to escape liability by continuing to
> violate the tax laws even if the violation is

27

unintentional and undiscovered.  The amount, if any, that
Swift ultimately pays to the IRS is relevant only in the
computation of damages.

Id. at 799-800.  Because the claims against State Farm accrued pre-

petition, the Fifth Circuit held that they were § 541(a) property

of Swift's bankruptcy estate.  Id. at 798 n. 35, and 800-801.

    In the Original Petition filed in the removed action

Appellants alleged:

Trippon and Company were George and Cindy's tax
accounting firm for many years.  Trippon and Company
prepared all of George's tax returns during the 1990's
and prepared those for Cindy after she married George in
1998.  George consulted Trippon and Company, in their
professional capacity as an accountant/tax expert, with
respect to discharging tax liabilities prior to 1997 in
bankruptcy.  Trippon was to calculate the days necessary
under the Tax Code and all other applicable law for
George's tax liability to be dischargeable prior to the
filing of George's Bankruptcy Petition [in 1996 in the
Victoria Division of the Southern District of Texas].
This calculation included, among other factors, the time
necessary for the subject income tax returns to be on
file with the IRS.  Trippon and Company had been George's
tax CPA's during his earlier[, i.e., pre-1996] bankruptcy
which was dismissed by agreement.  Trippon and Company
calculated said time parameters and told George that the
required time had accrued and that he should file a
Chapter 7 Bankruptcy Petition, which he did and scheduled
the said income tax liability as a dischargeable debt.
After George filed his bankruptcy petition, he received
a discharge order.  Trippon and Company told George and
Cindy that the subject income tax liability was
discharged and that he no longer owed same.
Subsequently, George learned that Trippon and Company had
miscalculated the dates for his bankruptcy filing and the
income tax liability had not been discharged.  Trippon
and Company, along with Carr, became aware of their
negligence in calculating the dates and that George still
owned the tax liability and concealed the true facts from
him.  Eventually, Cindy lost her homestead in Rosenberg,

Texas worth at least $500,000.00 due to the failure of Trippon, Company to tell her of their negligence.[50]

The allegations in the Original Petition that Appellants filed in state court show that the negligent acts of malpractice about which they complained occurred prior to 1997 when Trippon allegedly miscalculated the date on which Neely filed his 1996 bankruptcy petition.[51] The allegations in the Original Petition also show that facts supporting each element of the negligence claims asserted in the removed action came into existence before Neely filed his Chapter 7 petition on October 19, 2004:  Neely employed Trippon as his accountant in connection with a bankruptcy petition that he filed in 1996; Trippon owed Neely a legal duty with respect to the work he performed for the bankruptcy filed in 1996; Trippon breached his duty to Neely in connection with the 1996 bankruptcy by miscalculating the date that bankruptcy petition was filed and hiding that negligence from him; Neely accepted Trippon's advice and filed the 1996 bankruptcy on the date Trippon advised and sustained damages because Trippon's miscalculation of the filing date made the taxes scheduled therein ineligible for discharge.

---

[50]Plaintiff's Original Petition, Docket Entry No. 8-5, pp. 2-3.

[51]At the show cause hearing held on June 20, 2012, George Neely testified that "the taxes that were scheduled in the '96 Victoria bankruptcy should have been discharged.  And they were not, because the '96 bankruptcy in Victoria was not timely filed by thirty days. Mr. Trippon miscalculated the date for filing those.  That is why he is being sued." Transcript of June 20, 2012, Show Cause Hearing, Docket Entry Nos. 23-9 and 29-2, p. 34:4-8.

See Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997) ("A person suffers legal injury from faulty professional advice when the advice is taken.").

The acts about which Appellants complained are not simply erroneous tactical decisions like the decision to use cash accounting instead of accrual accounting at issue in Atkins, 417 S.W.2d at 153. Appellants' allegations that Trippon failed to accurately calculate the date to file Neely's 1996 bankruptcy so that Neely's tax debt would be discharged, and that Appellees failed to disclose Trippon's negligence when they learned of it, describe a situation analogous to the facts at issue in Swift where but for State Farm's negligence the debtor would not have had any tax liability arising from his retirement plan, and to the hypothetical situation where, but for the surgeon's negligence in leaving a medical instrument in his patient's body, no injury would have occurred. As with State Farm's negligent failure to revise its retirement plan, and the hypothetical surgeon's negligent failure to remove a dangerous metal instrument from inside his patient's body, the acts about which Appellants complained – miscalculating the filing date for Neely's 1996 bankruptcy and concealing that miscalculation from Neely – are acts that constituted legally cognizable injury even if Neely did not know about the miscalculation because that miscalculation precluded tax liabilities scheduled in his 1996 bankruptcy from being discharged.

See In re Swift, 129 F.3d at 800 ("Swift incurred . . . liability
even if he did not know or discover that he owed additional taxes.
This is a legal injury that gave rise to a cause of action at least
by the time he converted his Keogh plan into the defective IRA.").
Accordingly, the court concludes that Neely suffered legally
cognizable injury when he accepted Trippon's advice and filed the
1996 bankruptcy petition on the miscalculated date because filing
on that date meant that taxes scheduled in that bankruptcy were not
eligible for discharge. See Murphy, 964 S.W.2d at 270 ("A person
suffers legal injury from faulty professional advice when the
advice is taken.").

Alternatively, the court concludes that the latest possible
date for Neely to have suffered legally cognizable injury from the
miscalculated filing date for his 1996 bankruptcy was the date or
dates on which he received notice of deficiencies stemming from
taxes that were not discharged in his 1996 bankruptcy. See Atkins,
417 S.W.2d at 150. Because Neely scheduled these tax deficiencies
in his 2004 bankruptcy petition, the date on which Neely received
notice of deficiencies stemming from taxes that were not discharged
in his 1996 bankruptcy had to have occurred before Neely commenced
his 2004 bankruptcy case. The court's conclusion that Neely had to
have received notice of deficiencies stemming from taxes that were
not discharged in his 1996 bankruptcy before Neely commenced his
2004 bankruptcy case is corroborated by assertions contained in the

31

demand letter that Neely sent to Trippon on June 18, 2010, which was admitted into evidence at the Bankruptcy Court's March 22, 2012, hearing,[52] and in Appellants' description of the evidence presented at the June 20, 2012, in the brief filed with this court.

In the demand letter that Neely sent to Trippon on June 18, 2012, Neely stated:

> . . . My claim arises in connection with your preparation of several income tax returns and the filing of same and advising me and my bankruptcy attorney that the tax returns had been on file the required period of time so as to discharge the taxes, penalties and interest due in connection with the income tax returns in a Chapter 7 bankruptcy proceeding filed by me in Victoria, Texas in approximately 1997. For several years after the Chapter 7 Discharge order received by me from the Victoria Bankruptcy Court you continued to advise me in connection with my financial affairs that the income taxes scheduled in the 1997 bankruptcy case in Victoria, Texas, were no longer owed by me.
>
> I again conferred with you in October of 2004 in connection with you and Bill Carr regarding my financial situation, at which time both you and he advised me to file another Chapter 7 Bankruptcy proceeding. I did so and eventually filed an adversary against the IRS to confirm the discharge of approximately $300,000.00 in taxes, penalty and interest for the years covered in the 1997 Victoria, Texas Bankruptcy proceeding. The Bankruptcy Court in Houston, Texas entered a Summary Judgment that the 1997 bankruptcy case filed by me in Victoria, Texas did not discharge the taxes, interest and penalties you were retained to handle because the income tax returns were not on file the required period of time to effect a discharge of the taxes, penalties and interest owed in connection therewith. . .

---

[52]Docket Entry No. 8-24, pp. 3-4. <u>See also</u> Transcript of March 22, 2012 hearing, Docket Entry Nos. 8-27, 22-6, 29-1, p. 11:1-4, and Exhibit 1 thereto. <u>See also</u> Docket Entry No. 17-1 in Adversary 11-03637, pp. 1-2.

> . . . But for your negligence in the handling of the
> Victoria Bankruptcy income tax matters, and your
> subsequent advice, I would not have needed to file the
> 2004 Bankruptcy proceeding as you and Bill Car advised me
> to do and would not have experienced the severe financial
> losses as a proximate result thereof.[53]

In the brief that Appellants filed in this court, Appellants state

that the evidence presented at the June 20, 2012, hearing

> fairly and reasonably established that Appellees had
> prepared all of the tax returns for George Neely that
> were scheduled in the Victoria Bankruptcy; **that Appellees**
> **notified him in late 2003 or early 2004 that they were**
> **receiving notices from the IRS about taxes being due**
> **which had been discharged in the Victoria Bankruptcy.**[54]

Like the Original Petition that Appellants filed in the

removed state court action, statements contained in both the demand

letter that Neely sent to Trippon in June of 2010, and in

Appellants' own description of the facts presented to the

Bankruptcy Court at the June 20, 2012, hearing establish that Neely

was aware of facts supporting each element of the negligence claims

asserted in the removed state court action before he filed his

Chapter 7 petition on October 19, 2004: Neely knew that he had

employed Trippon as his accountant in connection with the

bankruptcy petition that he filed in 1996; Neely knew that Trippon

owed him a legal duty with respect to the work performed for the

1996 bankruptcy; Neely accepted Trippon's advice and filed the 1996

---

[53]Id.

[54]Amended Brief for Appellants, Docket Entry No. 27, pp. 19-20
(emphasis added).

bankruptcy on the advised date and sustained damages because taxes scheduled therein were not discharged.  See Murphy, 964 S.W.2d at 270.

To the extent that allegations in the Appellants' Original Petition that Trippon breached his duty to them in connection with Neely's 1996 bankruptcy not only by miscalculating the date for filing the bankruptcy petition, but also by hiding that miscalculation from them are intended to allege that Trippon fraudulently concealed his negligence, such a claim has no merit. The doctrine of fraudulent concealment provides that where a defendant is under a duty to make a disclosure, but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned of it through the exercise of reasonable diligence.  See Ponder v. Brice & Mankoff, 889 S.W.2d 637, 645 (Tex.App.-Houston [14th Dist.] 1994, writ denied)(citing Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex. 1983)).  The plaintiff must exercise reasonable diligence to discover what has been hidden from him by the defendant and the period of tolling may not extend beyond the time the plaintiff actually acquired knowledge of the facts or should have acquired such knowledge by the exercise of reasonable diligence.  Id.  See also Arabian Shield Development Co. v. Hunt, 808 S.W.2d 577, 584-85 (Tex.App.-Dallas 1991, writ

denied); <u>Leonard v. Eskew</u>, 731 S.W.2d 124, 128-29 (Tex.App.-Austin 1987, writ ref'd n.r.e.).

Appellants alleged that Trippon hid the fact of his negligence from them and argued that Neely did not discover that Trippon had negligently miscalculated the date for filing his 1996 bankruptcy petition until April of 2010 when Carr disclosed the miscalculation to him during a telephone conversation. The Bankruptcy Court found Neely's testimony on this issue not credible, but even assuming that Neely truthfully told the Bankruptcy Court that he did not learn that Trippon had miscalculated the date for filing the 1996 bankruptcy until April of 2010, his claims against Trippon would still be time barred because "[t]he statutory period does not await a plaintiff's leisurely discovery of the full details of the alleged [claim]." <u>Humphrey v. J.B. Land Co.</u>, 478 F.Supp. 770, 772 (S.D. Tex. 1979). Since as evidenced by Neely's 2004 bankruptcy filing, the demand letter that Neely sent Trippon in June of 2010, and statements contained in Appellants' brief to this court, Neely knew that the IRS had sent Trippon notice of deficiencies for taxes that had been scheduled in his 1996 bankruptcy before he filed his 2004 bankruptcy, Neely knew facts that either alerted him to the claims asserted against Trippon, or should have alerted him to those claims with the exercise of reasonable diligence. <u>See</u> <u>Ponder</u>, 889 S.W.2d at 645; <u>Arabian Shield</u>, 808 S.W.2d at 585 ("Once

the plaintiff knows or should know of the deceit, reliance is no longer reasonable, and the tolling effect ends.").

(c)  Conclusions

Regardless of whether Neely suffered actual injury when the 1996 bankruptcy petition was filed on February 2, 1996,[55] when the discharge that excluded the scheduled taxes was granted on June 4, 1996,[56] or when Neely received notice of deficiencies arising from the failure of taxes scheduled in the 1996 bankruptcy to have been discharged, the Bankruptcy Court did not err in finding that

> the evidence shows that Neely's alleged cause of action arose prepetition, as it is based on Trippon's alleged failure to correctly advise Neely of the proper date to file his bankruptcy petition.  The Court finds that the alleged cause of action was property of the bankruptcy estate because it arose prepetition.[57]

---

[55]See Docket Report for Bankruptcy Petition # 96-20413, filed in the Southern District of Texas (Victoria Division), Exhibit 1 to United States of America's Cross-Motion for Summary Judgment and Response to Plaintiff/Debtor's Motion for Summary Judgment, Docket Entry No. 26, filed in Adversary No. 08-3456, Neely v. Internal Revenue Service, on April 24, 2009.

[56]Id.

[57]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 3.  See also Docket Entry Nos. 23-20 and 26-5, p. 3.

3.  The Bankruptcy Court Did Not Err by Failing to Remand
    Claims Asserted by Cindy Neely

Asserting that Cindy D. Neely is a nondebtor, Appellants argue that "the bankruptcy court has no subject matter jurisdiction over her claims against Appellees and Carr, which must be remanded to state court."[58]  Appellants argue that "in the bankruptcy court's order of August 29, 2012, nothing is found by the bankruptcy court that would constitute a basis for applying any estoppel theory against Appellant Cindy Neely to prevent her from asserting her claims against Appellees."[59]  Appellees respond that:

> Cindy Neely did not appear at any of the hearings and .
> . . since Neely is not a practicing attorney, [George
> Neely] could not represent her.  Cindy Neely put on no
> evidence whatsoever.  Moreover, all of her claims were
> community property and as such were property of the
> bankruptcy estate.  See 11 U.S.C. § 541.  Since her
> claims were also property of the bankruptcy estate, they
> were properly adjudicated in the Bankruptcy Court.[60]

(a)  Applicable Law

Under the Bankruptcy Code a bankruptcy estate consists of "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is . . . under the sole, equal, or joint management or control of the debtor."  11 U.S.C. § 541(a)(2)(A).  Under Texas law, marital property is

---

[58]Amended Brief for Appellants, Docket Entry No. 27, p. 18.

[59]Id. at 19.

[60]Brief for Appellees, Docket Entry No. 29, pp. 17-18.

classified as either separate property or community property. Separate property includes all property a person acquires before marriage, property acquired during marriage by gift, devise, or descent, and recovery for personal injuries sustained during the marriage.  See Tex. Const. art. 16, § 15; Tex. Fam. Code § 3.001. Community property is "property, other than separate property, acquired by either spouse during marriage."   Tex. Fam. Code § 3.002.  The characterization of property as separate or community is determined by the inception of title, i.e., when a party first has a right of claim to the property by virtue of which title is finally vested.  Tex. Fam. Code § 3.404(a); Chavez v. Chavez, 269 S.W.3d 763, 767 (Tex.App.—Dallas 2008, no pet.).  "Once separate property character attaches, that character does not change because community funds are spent to improve the property."  Leighton v. Leighton, 921 S.W.2d 365, 367 (Tex.App.—Houston [1st Dist.] 1996, no writ).  There is a presumption that property possessed by either spouse during marriage is community property.   Tex. Fam.Code § 3.003(a).  The degree of proof necessary to prove that property is separate property is "clear and convincing evidence." Tex. Fam. Code § 3.003(b).  The characterization of property, if disputed, is a question of fact.  Scott v. Estate of Scott, 973 S.W.2d 694, 695 (Tex.App.-El Paso 1998, no writ); Winfield v. Renfro, 821 S.W.2d 640, 652 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

Texas recognizes both sole-management community property and joint-management community property. Tex.Fam. Code § 3.102. See also Douglas, 987 S.W.2d at 883. "[C]ommunity property is subject to the joint management, control and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement." Jean v. Tyson-Jean, 118 S.W.3d 1, 5 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (citing Tex.Fam. Code § 3.102(c)). Only a debtor's separate property, sole-management community property, and joint-management community property become part of the bankruptcy estate; the sole-management community property of a debtor's spouse does not. See 11 U.S.C. § 541(a)(2)(A). However, if sole-management community property is mixed or combined with a spouse's sole-management community property, then the mixed or combined community property becomes joint-management community property, unless the spouses provide otherwise by power of attorney in writing or other agreement. Tex. Fam. Code § 3.102(b); Douglas, 987 S.W.2d at 883.

Whether a legal cause of action, such as the negligent malpractice claims at issue here, is classified as separate property, joint-management community property, or sole-management community property depends on the nature of the injury asserted. See Douglas, 987 S.W.2d at 883; Jean, 118 S.W.3d at 5. See also Graham v. Franco, 488 S.W.2d 390, 396-97 (Tex. 1972) (classifying damages as community or separate property based on whether injury

was to the individual spouse, such as pain and suffering, or ultimately to the marital community, such as loss of earning capacity). "When different kinds of damages are claimed in a single cause of action, we look to the nature of each injury when classifying those damages as community or separate property." Douglas, 987 S.W.2d at 883.


        (b)   Application of the Law to the Facts

    The Original Petition that Appellants filed in the removed state court action shows that Cindy Neely had no interest in the malpractice claims alleged therein because they were George's separate property, and that if Cindy did have an interest in them, that interest was also property of the Bankruptcy estate because that interest was community property under the sole, equal or joint management of the debtor, George Neely.  11 U.S.C. § 541(a)(2)(A).[61]

    The factual allegations in Appellants' Original Petition state

---

[61]Section 541(a)(2)(A) provides:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:

> . . .

> (2)  All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is --

>> (A)  under the sole, equal, or joint management and control of the debtor.

that Cindy and George Neely married in 1998, but that the acts of
malpractice alleged occurred prior to 1997 when Neely consulted
Trippon in his professional capacity as an accountant/tax expert,
with respect to discharging in bankruptcy tax liabilities incurred
prior to 1997.  Appellants alleged that

> Trippon and Company  prepared all of George's tax returns
> during the 1990's and prepared those for Cindy after she
> married George in 1998.  George consulted Trippon and
> Company,  in  their  professional  capacity  as  an
> accountant/tax expert, with respect to discharging tax
> liabilities prior to 1997 in bankruptcy.  Trippon was to
> calculate the days necessary under the Tax Code and all
> other applicable law for **George's** tax liability to be
> dischargeable prior to the filing of . . . **George's**
> Bankruptcy Petition. Trippon and Company calculated said
> time parameters and told **George** that the required time
> had accrued and that **he** should file a Chapter 7
> Bankruptcy Petition, which **he** did and scheduled the said
> income tax liability as a dischargeable debt.   After
> **George** filed his bankruptcy petition, **he** received a
> discharge order.   Trippon and Company told **George** and
> Cindy that the subject income tax liability was
> discharged and that **he** no longer owned same.
> Subsequently, **George** learned that Trippon and Company has
> miscalculated the dates for his bankruptcy filing and the
> income tax liability had not been discharged.   Trippon
> and Company, along with Carr, became aware of their
> negligence in calculating the dates and that **George** still
> owed the tax liability and concealed the true facts from
> **him**.[62]

These allegations establish that the negligence claims arise from
advice that Trippon and Company provided to George before he
married Cindy.  Moreover, for the reasons stated in § III.A.2,
above, the court has already concluded that George suffered legal

---

[62]Plaintiff's Original Petition, Docket Entry Nos. 8-5 and 22-
23, pp. 2-3.

injury and that his claims against Trippon and Company accrued when
he accepted their advice and filed bankruptcy in 1996.   Because
George's claims accrued before he married Cindy, they were George's
separate property in which Cindy had no interest.   See Tex. Fam.
Code § 3404(a); Chavez, 269 S.W.3d at 767.

Although Appellants also alleged that Appellees violated a
duty of care owed to George and Cindy, the factual allegations show
that the negligent calculation of the date for filing George's 1996
bankruptcy occurred before Cindy and George were married in 1998,
and the Original Petition filed in state court lacks any factual
allegations that, if true, would show that Appellees violated a
duty of care owed to Cindy by failing to disclose to her that they
negligently calculated the date for filing George's 1996 bankruptcy
which predated her marriage to George.   Because the professional's
legal duty arises out of the contract for professional services,
Averitt v. PriceWaterhouseCoopers LLP, 89 S.W.3d 330, 334-35
(Tex.App.—Fort Worth 2002, no pet.), it runs only to those who are
in privity with the professional and rely on their professional
advice.   See Federal Deposit Insurance Corporation v. Ernst &
Young, 967 F.2d 166, 170 (5th Cir. 1992) (in negligence action
against accounting firm, firm could not be held liable for
negligence, because plaintiff association did not rely on
accounting firm's audit).

42

Even if Appellants' Original Petition alleges facts that could be construed to state a claim in which Cindy had an interest, any such claim would necessarily have arisen after Cindy's marriage to George and would, therefore, be subject to the presumption that it was community property. See Tex. Fam. Code § 3.003(b). Because community property is subject to the "joint management, control and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement," Jean, 118 S.W.3d at 5, absent allegations and/or evidence that any claim in which Cindy had an interest was either her separate property or her sole-management community property, Cindy had no claim that would not have belonged to George's bankruptcy estate. See 11 U.S.C. § 541(a)(2).

Appellants did not argue to the Bankruptcy Court, and have not argued to this court, that any of the claims alleged in the removed action were Cindy's separate property or her sole management community property. Since, moreover, Cindy Neely neither attended nor participated in the March 22, 2012, hearing held on Appellants's motions to remand, nor did she attend or participate in the Show Cause hearing held on June 20, 2012, Appellants presented no evidence from which the Bankruptcy Court could have concluded that Trippon's allegedly negligent calculation of the filing date for George's 1996 bankruptcy damaged Cindy. These

43

conclusions are corroborated by the following statements in
Appellants' brief to this court:

> No evidence was admitted concerning Cindy Neely's
> knowledge of her claims against Appellees, which are
> different from George Neely's claims. . . No evidence was
> ever admitted or even offered concerning Cindy Neely's
> claims which appear to have accrued after January 2010
> and pertain to the time period when Appellees were
> representing her after her marriage to George Neely in
> 1998.  George Neely's claims, however, pertain to the
> failure of Appellees to accurately calculate the date on
> which to file the Victoria bankruptcy, which predated
> Cindy's marriage to George.[63]

Accordingly, the Bankruptcy Court did not err by failing to remand
claims asserted by Cindy Neely.


4.   Conclusions

Because the Bankruptcy Court did not err by asserting
jurisdiction over the removed state court action, by finding that
the claims asserted in the removed action belonged to Neely's
bankruptcy estate, or by finding that Cindy Neely had no interest
in those claims, the Bankruptcy Court did not err by denying
Appellants' initial and amended motions to remand.


B.   **The Bankruptcy Court Did Not Err by Denying Appellants'
     Notices of Dismissal and Granting Appellees' Motion to Dismiss**

On March 22, 2012, the Bankruptcy Court held a hearing on the
Appellants' motions to remand and on the Appellees' motion to

---

[63]Amended Brief for Appellants, Docket Entry No. 27, p. 24.

dismiss.  At the conclusion of the hearing the Bankruptcy Court said, "I am going to grant the Motion to Dismiss with regards to the Defendants, Mr. Trippon, the Trippon Company CPA and Mr. Carr. . . with prejudice."[64]  In the August 29, 2012, Order, the Bankruptcy Court found that "the lawsuit the Neelys' filed in the 151st Judicial District Court against Trippon, which was removed to this Court, is barred by limitations,"[65] and that "any claims or potential claims against Trippon were property of the bankruptcy estate and belonged to the chapter 7 trustee, and the Neelys have no standing to bring such claims."[66]  Appellants argue that the claims asserted in the removed action were not time barred, but do not dispute that if the claims belonged to Neely's bankruptcy estate, then they lacked standing to assert them.[67]  Appellees argue that the Bankruptcy Court correctly dismissed the claims asserted in the removed state court action because Appellants lacked standing to assert them and they were barred by limitations.[68]

---

[64]Transcript of March 22, 2012, hearing, Docket Entry Nos. 8-27, 22-6, and 29-1, p. 15:20-23.

[65]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 3.  See also Docket Entry Nos. 23-20 and 26-5, p. 3.

[66]Id. at 7.

[67]Amended Brief for Appellants, Docket Entry No. 27, p. 27.

[68]Brief for Appellees, Docket Entry No. 29, p. 11.

1. The Bankruptcy Court Did Not Err by Denying Appellants'
Notices of Dismissal Because Appellants Lacked Standing

Shortly after Appellees removed the state court action,
Appellants each filed a Notice of Dismissal pursuant to Federal
Rule 41(a)(1).[69] Subject to certain exceptions, Rule 41(a)(1),
allows plaintiffs to voluntarily dismiss an action without a court
order by filing a notice of dismissal any time before an adverse
party serves an answer or a motion for summary judgment, which ever
occurs first. See Fed. R. Civ. P. 41(a)(1)(A)(i). Appellees
objected to Appellants' notices of dismissal by asserting:

> Neely has improperly attempted to collect on an asset of
> the estate without listing such asset in his schedules,
> has attempted to circumvent the Bankruptcy Court by
> waiting until they thought that the Bankruptcy was closed
> prior to bringing a suit that is time barred on its face.
> For these reasons, Defendants object to dismissing the
> cause of action without prejudice as alleged in Neely's
> Motions to Dismiss. Any dismissal of this adversary
> should be with prejudice.[70]

Appellees's Notice of Removal contained the same arguments.[71]

Once a Chapter 7 bankruptcy case exists, the trustee, as the
representative of the bankruptcy estate, is the real party in
interest, and the party with exclusive standing to assert causes of
action belonging to the estate. 11 U.S.C. §§ 323, 541(a)(1). In
re Seven Seas, 522 F.3d at 584 (citing In re Educators Group Health

---

[69]Docket Entry Nos. 8-6 and 8-8.

[70]Defendants James M. Trippon and J.M. Trippon & Company,
C.P.A.'s Motion to Dismiss, Docket Entry No. 8-10, p. 6.

[71]Notice of Removal, Docket Entry No. 8-3, pp. 1-2 ¶¶1-5.

46

Trust, 25 F.3d 1281, 1284 (5th Cir. 1984)("If a claim belongs to the estate, then the bankruptcy trustee has exclusive standing to assert it."). See also Wieburg v. GTE Southwest Inc., 272 F.3d 302, 306 (5th Cir. 2001) (acknowledging that where "the claims are property of the bankruptcy estate, the Trustee is the real party in interest with exclusive standing to assert them"). "[A]ll rights held by the debtor in the asset are extinguished unless the asset is abandoned" by the trustee to the debtor under 11 U.S.C. § 554. Kane, 535 F.3d at 385. For the reasons stated in § III.A.2, above, the court has already concluded that the Bankruptcy Court did not err by finding that the claims Appellants' asserted in the removed state court action belonged to Neely's bankruptcy estate. Since the trustee was the real party in interest, and the party with exclusive standing to assert claims belonging to the estate, 11 U.S.C. §§ 323, 541(a)(1), the Bankruptcy Court did not err by denying Appellants' Notices of Dismissal because the Appellants had no standing either to prosecute the removed action or to dismiss the removed action once Appellees had removed it to the Bankruptcy Court.

### 2. The Bankrutpcy Court Did Not Err by Granting Appellees' Motion to Dismiss

Appellants argue that the Bankruptcy Court erred by finding that the negligence claims asserted in the state court action were time barred because Appellees produced no evidence that the claims

47

were time barred, and because Neely testified that he did not discover Trippon's malpractice until April of 2010.[72]   Appellees argue that the Bankruptcy Court properly found that the malpractice claims were barred by the applicable statute of limitations.[73]

(a)  Applicable Law

Texas law provides a two-year limitations period for filing a lawsuit based on negligence arising from accounting malpractice. See Tex. Civ. Prac. & Rem. Code § 16.003; Murphy, 964 S.W.2d at 270 (holding that a common-law action for accounting malpractice is subject to § 16.003 of the Texas Civil Practice & Remedies Code, which provides that suit must be brought not later than two years after the day the cause of action accrues).   Claims not brought within two years from the date the cause of action accrues are barred.  Schaefer v. Gulf Coast Regional Blood Center, 10 F.3d 327, 331 (5th Cir. 1994).  A cause of action for accounting malpractice accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."  Murphy, 964 S.W.2d at 270.  See also Vaught, 107 F.3d at 1140, and In re Swift, 129 F.3d at 798 (recognizing that a plaintiff becomes entitled to commence

---

[72]Amended Brief for Appellants, Docket Entry No. 27, pp. 24, 27.

[73]Brief for Appellees, Docket Entry No. 29, pp. 15-17.

a lawsuit when a legal wrong is completed even if he remains unaware of his injury).  A legal injury from faulty accounting advice occurs when the advice is taken.  Murphy, 964 S.W.2d at 270-71.  Nevertheless, claims for accounting malpractice are subject to a discovery rule pursuant to which the statute of limitations may be tolled thus lengthening the time within which a plaintiff may file a lawsuit.  Id.

Under the Texas discovery rule a cause of action may accrue when the legal wrong is consummated, but the statute of limitations is tolled until the plaintiff discovers, or through the exercise of reasonable care and diligence should have discovered, facts giving rise to a cause of action.  Id.  See also Swift, 129 F.3d at 796-97; Schaefer, 10 F.3d at 331; Vaught, 107 F.3d at 1140.  Once a plaintiff has knowledge of facts sufficient to excite inquiry, which if pursued with reasonable diligence would lead to the discovery of the injury, he is deemed to have knowledge of the cause of action as a matter of law.  See Interfirst Bank-Houston N.A. v. Quintana Petroleum, 699 S.W.2d 864, 876 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).  "Discovery" does not mean "actual knowledge of the particulars of a cause of action," but whether the plaintiff has "knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights."  Vaught, 107 F.3d at 1141-42.  The tolling period may thus expire and the statute of limitations begin to run before

49

a plaintiff subjectively learns "details of the evidence by which to establish his cause of action." Id. at 1140. In Murphy, 964 S.W.2d at 271, the Texas Supreme Court held that for cases arising from liability for payment of federal taxes, the statute of limitations begins to run no later than "when the IRS takes a final, formal position."

(b) Application of the Law to the Facts

At the hearing held on March 22, 2012, Appellees argued that Neely knew about the deficiencies resulting from the taxes that had been scheduled but not discharged in his 1996 bankruptcy "way before he filed the 2004 bankruptcy, certainly in 2005 when the IRS filed their Proof of Claim in this case."[74] Although Neely argued that "[i]t was not until after [he] filed a[n adversary] suit against the IRS . . . and it was -- . . . decided against [him], that [he] discovered or was told that . . . Trippon ha[d] miscalculated the dates,"[75] the Bankruptcy Court found "that Neely knew or should have known of his alleged cause of action against Trippon no later than the date the IRS filed its proof of claim in

---

[74]Transcript of March 22, 2012, hearing, Docket Entry Nos. 8-27, 22-6, and 29-1, p. 6:7-8.

[75]Id. at 8:19-22.

cause no. 04-44898, October 14, 2005."[76]   The Bankruptcy Court explained that

> Neely testified that he was unaware of the existence of the cause of action until the district court affirmed this Court's grant of summary judgment in favor of the IRS.  The Court finds that George Neely is not a credible witness and his testimony concerning his alleged cause of action against Trippon and awareness of its accrual is not credible.[77]

Although Appellants continue to argue that Neely did not discover that Trippon had miscalculated the date for filing his 1996 bankruptcy until April of 2010, Appellants neither argue nor cite any evidence from which this court could conclude the Bankruptcy Court's determination that Neely's testimony on this issue was not credible was clearly erroneous.  See Fed. R. Bankr. P. 8013. Moreover, for reasons stated in § III.A.2(b)(2), above, the evidence before the Bankruptcy Court established not only that the claims asserted in the removed action accrued for purposes of § 541(a) of the Bankruptcy Code before Neely's bankruptcy case commenced on October 19, 2004, but also that when Neely filed his bankruptcy petition on October 19, 2004, Neely knew or through the exercise of reasonable diligence should have discovered facts giving rise to the claims asserted in the removed action. Accordingly, the Bankruptcy Court did not err by concluding that

---

[76]Order, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 5.

[77]Id.

"the lawsuit the Neelys' filed in the 151st Judicial District Court against Trippon, which was removed to this Court, is barred by limitations."[78]

### 3.   Conclusions

Because the Bankruptcy Court did not err by finding that the negligence claims asserted in the removed state court action were property of Neely's 2004 bankruptcy estate, and that the real party in interest and the party with exclusive standing to pursue claims belonging to the bankruptcy estate was Neely's Trustee, the Bankruptcy Court did not err by denying Appellants' Rule 41(a) notices of dismissal.  Because the Bankruptcy Court did not err in finding that the negligence claims asserted in the removed state court action were barred by limitations, the Bankruptcy Court did not err by granting Appellees' motion to dismiss since the pursuit of those claims would have had little, if any, impact on Neely's creditors.  See Wieburg v. GTE Southwest, Inc., No. 3:98-CV-2057-R, 2002 WL 31156431, at *2-5 (N.D.Tex. Sept. 26, 2002).  In Wieburg, the Fifth Circuit held that the district court had abused his discretion by dismissing prepetition claims after finding that a debtor lacked standing to raise them because the district court failed to provide an explanation of "why less drastic alternatives of either allowing an opportunity for ratification by the Trustee,

---

[78]Id. at 3.

or joinder of the Trustee, were inappropriate." <u>Wieburg</u>, 272 F.3d at 309.   On remand the district court explained that dismissal, rather than substitution of the trustee was appropriate, because (1) the debtor had not disclosed the claims at issue in her bankruptcy petition, (2) the debtor had a reasonable time after the standing issue was raised to obtain joinder, ratification, or substitution of the trustee but failed to do so, and (3) the impact of dismissal on the debtor's creditors was negligible.   <u>See</u> <u>Wieburg</u>, 2002 WL 31156431, at *2-5.   The Fifth Circuit affirmed the district court's decision following remand.   <u>See</u> <u>Wieburg v. GTE</u> <u>Southwest Inc.</u>, 71 Fed.Appx. 440, 2003 WL 21417074, at *2 (5th Cir. 2003) ("Now that we have the court's reasons, we conclude that it did not abuse its discretion by dismissing the suit.").   Applying the <u>Wieburg</u> factors to this case, the court concludes that the Bankruptcy Court did not err by granting Appellees' motion to dismiss because Neely failed to disclose those claims to the Trustee,[79] Neely had a reasonable time after the motion to dismiss was filed to obtain joinder, ratification, or substitution of the trustee but failed to do so, and dismissal of the negligence claims asserted in the removed state court action had no impact on Neely's creditors because they were time barred.

---

[79] <u>See</u> Amended Brief for Appellants, Docket Entry No. 27, p. 24 (acknowledging that Neely never disclosed their claims to the trustee).

## C.   The Bankruptcy Court Did Not Err by Denying Appellants' Second Amended Motion to Remand

On April 17, 2012, Appellants filed a second amended motion to remand in which they argued that their malpractice claims against Appellees should be remanded because the Trustee abandoned the estate's interest in them as of March 24, 2012.[80]   In its Order of August 29, 2012, the bankruptcy court found "[s]ince the Neelys are judicially estopped from pursuing the alleged cause of action against Trippon and the Court previously dismissed the cause of action with prejudice, the Court concludes that remand is moot."[81] Citing Love v. Tyson Foods, Inc., 677 F.3d 258, 261-262 (5th Cir. 2012), the bankruptcy court explained that "the Neelys are judicially estopped from pursuing the alleged cause of action against Trippon,"[82] because

> Neely . . . testified that he did not schedule his cause of action against Trippon after he became aware of it because he believed that Trippon's attorney would notify the [C]hapter 7 trustee of the existence of the cause of action.   "Pursuant to the Bankruptcy Code, debtors are under a continuing duty to disclose all pending and potential claims." Kane v. National Union Fire Ins. Co., 535 F.3d 380, 384-385 (5th Cir. 2008); see also 11 U.S.C. § 521(1).   The Court finds that it is the debtor's burden to disclose his assets in his bankruptcy schedules and

---

[80]Docket Entry No. 22-3.   See also Docket Entry No. 36 in Adversary No. 11-03637.

[81]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 6.

[82]Id.

Neely failed to disclose his alleged cause of action against Trippon.[83]

Asserting that the Trustee filed his Notice of Intent to Abandon Property on March 24, 2012, Appellants argued that because no objection or request for hearing was served on the Trustee within 14 days thereafter, the malpractice claims were deemed abandoned, the Trustee's abandonment divested the bankruptcy estate of any interest in those claims and divested the Bankruptcy Court of jurisdiction over them. Thus, asserting that as of March 24, 2012, the malpractice claims belonged to them instead of to Neely's bankruptcy estate, Appellants argue that the Bankruptcy Court erred by failing to grant their amended motion to remand.[84]

Appellants' argument that the Bankruptcy Court erred by failing to grant their second amended motion to remand has no merit because on March 22, 2012, two days before the Trustee filed his notice of intent to abandon, and almost a month before Appellants filed their second amended motion to remand, the Bankruptcy Court dismissed the malpractice claims with prejudice as time barred.[85] The Bankruptcy Court's dismissal of the malpractice claims on March 22, 2012, extinguished any interest that could have reverted to the Appellants following the Trustee's abandonment of those

---

[83]Id.

[84]Amended Brief for Appellants, Docket Entry No. 27, pp. 12-13.

[85]Exhibits B-D to Amended Notice of Appeal, Docket Entry No. 16.  See also Docket Entry Nos. 8-20 and 26-4.

claims on March 24, 2012. Appellants cite no authority in support of their contention either that the claims that had been dismissed almost a month earlier could be remanded when they filed their second amended motion to remand on April 17, 2012, or that those claims were abandoned. See 11 U.S.C. § 554(a) (requiring notice and hearing before Bankruptcy Court can authorize abandonment of an asset such as the claims asserted in the removed action). The Bankruptcy Court did not err by failing to grant Appellants second amended motion to remand.

**D.   The Bankruptcy Court Did Not Err by Sanctioning George Neely**

Following the Show Cause hearing held on June 20, 2012, the Bankruptcy Court sanctioned George Neely by ordering him to pay attorneys' fees to James M. Trippon and J.M. Trippon & Company, C.P.A., in the amount of $14,763.00, and to Mynde Eisen in the amount of $12,931.00.[86] In support of the decision to sanction Neely, the Bankruptcy Court stated:

> The Court finds that Neely's lawsuit was groundless and frivolous and brought for purposes of harassment because Neely, until he was disbarred in 2008, was a licensed attorney and Neely knew that the applicable statute of limitations for his cause of action against Trippon was 2 years. The Court finds that any claims or potential claims against Trippon were property of the bankruptcy

---

[86]Order of August 29, 2012, Exhibit E to Amended Notice of Appeal, Docket Entry No. 16, p. 15; and Final Judgment, Exhibit F to Amended Notice of Appeal, Docket Entry No. 16.

estate and belonged to the chapter 7 trustee, and the
Neelys have no standing to bring such claims.[87]

The Bankruptcy Court also stated that "George Neely has a history
in his bankruptcy case of vexatious behavior."[88]   Citing the
standard provided by Texas Rule of Civil Procedure 13, the
Bankruptcy Court followed the Fifth Circuit's directive in Tompkins
v. Cyr, 202 F.3d 770, 787 (5th Cir. 2000), to apply state
procedural rules when considering sanctions in a removed action.
Appellants argue that the Bankruptcy Court's decision to sanction
Neely was based on an erroneous determination that he violated Rule
13 of the Texas Rules of Civil Procedure by filing a groundless
lawsuit, and that the sanctions imposed on him are excessive and
based on an erroneous view of the law and the evidence.[89]   Appellees
argue that the Bankruptcy Court did not err by imposing monetary
sanctions on Neely.[90]


1.   Applicable Law

State, not federal, sanction rules "apply to filings in state
court, even if the case is later removed to federal court."
Tompkins, 202 F. 3d at 787.   But, once a case is removed to federal

---

[87]Order of August 29, 2012, Exhibit E to Amended Notice of
Appeal, Docket Entry No. 16, p. 7.

[88]Id.

[89]Amended Brief for Appellants, Docket Entry No. 27, pp. 24-30.

[90]Brief for Appellees, Docket Entry No. 29, pp. 22-25.

court, filings in that court are governed by Rule 11 of the Federal Rules of Civil Procedure.  Edwards v. Gen. Motors Corp., 153 F.3d 242, 245 (5th Cir. 1998). Here, the Bankruptcy Court correctly relied on Rule 13 of the Texas Rules of Civil Procedure when it considered Appellees' request for sanctions, related to Appellants' complaint filed in Texas state court.  Imposition of sanctions under Rule 13 is reviewed for abuse of discretion.  See Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007); Skidmore Energy, Inc. v. KPMG, 455 F.3d 564, 566 (5th Cir. 2006), cert. denied, 127 S.Ct. 524 (2006).  A court abuses its discretion only if the order is based on an erroneous assessment of the law or the evidence. Dolenz v. Boundy, 197 S.W.3d 416, 421 (Tex.App.—Dallas 2006, pet. denied).  An abuse of discretion occurs when "the court acted without reference to any guiding rules and principles."   Id. (citing Cire v. Cummings, 134 S.W.3d 835, 838 (Tex. 2004)).

Rule 13 authorizes the imposition of sanctions against an attorney, a represented party, or both, who filed a pleading that is either: (1) groundless and brought in bad faith; or (2) groundless and brought to harass.  Tex. R. Civ. P. 13.  See Rudisell v. Paquette, 89 S.W.3d 233, 236-37 (Tex.App.— Corpus Christi 2002, no pet.).  The rule defines "groundless" as having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." Tex. R. Civ. P. 13.  "Groundlessness turns on the legal merits of

the claim." Dike v. Peltier Chevrolet, Inc., 343 S.W.3d 179, 184 (Tex.App.— Texarkana 2011, no pet.). "To determine if a pleading was groundless, the trial court uses an objective standard: did the party and counsel make a reasonable inquiry into the legal and factual basis of the claim?" Id. (quoting In re United Services. Automobile Association., 76 S.W.3d 112, 116 (Tex.App.—San Antonio 2002, no pet.)). The court must look to the facts available to the litigant and to the circumstances at the time the suit was filed. Id. Rule 13 requires courts to presume that parties and their counsel file all papers in good faith, and to require the party seeking sanctions to overcome the presumption. Tex. R. Civ. P. 13; GTE Communications Systems Corp. v. Tanner, 856 S.W.2d 725, 731 (Tex. 1993). The party seeking sanctions has the burden of showing its right to relief. Tanner, 856 S.W.2d at 731; Elkins v. Stotts-Brown, 103 S.W.3d 664, 668 (Tex.App.—Dallas 2003, no pet.). Sanctions may only be imposed for good cause, the particulars of which must be stated in the order. Rudisell, 89 S.W.3d at 237. The Texas Rules of Civil Procedure state that when a court orders sanctions upon finding that a party has violated Rule 13, that court "shall" order the offending party to pay "the reasonable expenses incurred in obtaining the order, including attorneys' fees." Tex. R. Civ. P. 215.1(d).

2.   Application of the Law to the Facts

(a)  The Bankruptcy Court Did Not Abuse It's Discretion
     by Finding that Neely Filed a Groundless Lawsuit

Appellants argue that the Bankruptcy Court abused its
discretion by ordering sanctions based on its finding that Neely
filed a groundless lawsuit against Appellees because the claims
asserted therein were property of Neely's bankruptcy estate, the
Appellants lacked standing to assert those claims, and because
Neely was a disbarred attorney, who knew that the statute of
limitations for such claims was two years.  Appellants argue that
they "had grounds for their petition in state court, both legal and
factual. . . The Bankruptcy Court erroneously found that the claims
against Appellees were time barred."[91]

Appellees repeatedly informed Neely that he and his wife had
no standing to assert the claims at issue because those claims
belonged to Neely's bankruptcy estate, and because those claims
were time-barred.   Neely argued that the claims were not time-
barred because until the district court dismissed his appeal of his
adversary against the IRS he did not know that taxes scheduled in
the 1996 bankruptcy had not been discharged, and because Trippon
fraudulently concealed the fact that he had miscalculated the
filing date for Neely's 1996 bankruptcy.   The Bankruptcy Court
found that Neely's testimony was not credible.   The Bankruptcy

---

[91]Amended Brief for Appellants, Docket Entry No. 27, p. 27.

Court's finding was not an abuse of discretion because for the reasons stated in § III.A.2, above, the court has already concluded that the evidence before the Bankruptcy Court established that before he filed his bankruptcy petition on October 19, 2004, Neely knew that the IRS had sent Trippon notices of deficiencies for taxes scheduled in his 1996 bankruptcy and that this knowledge was sufficient either to apprise Neely of the malpractice claims that he asserted against Trippon in the removed action or with the exercise reasonable diligence would have apprised Neely of those claims.

> (b)   The Bankruptcy Court's Award of Attorneys' Fees Was Not Based on an Erroneous View of the Law or Evidence

Appellants argue that the Bankruptcy Court erred by ordering Neely to pay attorneys' fees to James M. Trippon and J.M. Trippon & Company, C.P.A., in the amount of $14,763.00 because Appellees' malpractice carrier paid attorney Richard White's fees and expenses, no contract for fees and expenses was introduced whereby Appellees agreed to pay or paid fees and expenses to White or had an agreement to reimburse the malpractice carrier for payment of fees and expenses to White, the billing records submitted in support of the fee application was a redacted summary that omitted descriptions of services provided and was prepared from an original

day-timer that was not made available at the hearing.[92] Appellants'
argument regarding the reasonableness of White's fee application
has no merit because at the June 20, 2012, Show Cause Hearing White
presented uncontradicted testimony regarding the reasonableness of
his fees within the context of this case.  White's testimony on the
reasonableness of the amounts sought in his application for
attorneys' fees provided sufficient support for the Bankruptcy
Court's award of fees to Trippon.[93]  Appellants' objections to
White's fee application based on redactions has no merit since
White testified that the redactions were intended to protect
attorney client privilege.  Accordingly, the court concludes that
the bankruptcy court did not err by ordering Appellants to pay the
fees that White testified were reasonable in this case.

Appellants argue that the Bankruptcy Court erroneously awarded
Mynde Eisen attorneys' fees in the amount of $12,931.00, and that
this award was an abuse of discretion because there is no nexus
between the conduct alleged and what actually occurred and the
sanction imposed.   Appellants' argument regarding the
reasonableness of Eisen's fee application has no merit because at
the June 20, 2012, Show Cause Hearing Eisen presented
uncontradicted testimony regarding the reasonableness of her fees

---

[92]Id. at 22-23.

[93]Transcript of June 20, 2012 Show Cause Hearing, Docket Entry
Nos. 23-9 and 29-2, pp. 43:6-47:6.

within the context of this case and the standard for awarding attorneys' fees stated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), overruled on other grounds by, Blanchard v. Bergeron, 109 S.Ct. 939 (1989). Eisen's testimony on the reasonableness of the amounts sought in her application for attorneys' fees provided sufficient support for the Bankruptcy Court's award of fees to her:

> THE COURT: . . . [F]or purposes of admitting Exhibit 1, these -- this is your list of expenses that you're seeking here, Ms. Eisen?
>
> MS. EISEN:     Right.
>
> THE COURT:     All right.  And your testimony is that they -- the *Johnson* factors are satisfied by all of your efforts in this case, as represented by these specific fees.
>
> MS. EISEN:     These entries, yes, Your Honor.
>
> THE COURT:     Yes.  These specific entries.  All right, fine.  Then, I will accept that --
>
> MS. EISEN:     Do I --
>
> THE COURT:     -- testimony and Exhibit 1 is admitted. Mr. Neely may respond in detail to that.  What was your question, please?  (Defendant's Exhibit 1 admitted.)[94]

Although the bankruptcy court allowed Neely to respond to Eisen's testimony regarding the reasonableness of her fees, Neely has neither cited nor pointed this court to any such response. Accordingly, the court concludes that the bankruptcy court did not

---

[94]Id. at 71:4-19.

err by ordering Appellants to pay the fees that Eisen testified were reasonable in this case.

### 3.   Conclusions

For the reasons stated in § III.D.2(a), the Bankruptcy Court did not err in finding that the removed state court action filed by Neely was groundless and frivolous and brought for purposes of harassment.  The Texas Rules of Civil Procedure state that when a court finds a party has violated Rule 13, that court "shall" order the offending party to pay sanctions, which include "the reasonable expenses incurred in obtaining the order, including attorney fees." Tex. R. Civ. P. 215.1(d).  For the reasons stated in § III.D.2(b), the amount of attorneys' fees that the Bankruptcy Court ordered George Neely to pay were neither unreasonable nor based on an erroneous view of the law or the evidence.

## IV.  **Conclusions and Order**

For the reasons stated above, the Bankruptcy Court's (1) Order Denying Plaintiffs' Amended Motion to Remand entered on March 22, 2012, is **AFFIRMED**; (2) Order denying Cindy D. Neely's Notice of Dismissal under FRCP 41(a) entered on March 22, 2012, is **AFFIRMED**; (3) Order denying George R. Neely's Notice of Dismissal under FRCP 41(a) entered on March 22, 2012, is **AFFIRMED**; (4) Order Denying Plaintiffs' Motions to Dismiss and Granting Defendants' Motion to

Dismiss entered on March 22, 2012, is **AFFIRMED**; (5) Order sanctioning appellants entered on August 29, 2012, is **AFFIRMED**; and (6) the Final Judgment entered on September 6, 2012, is **AFFIRMED**. Appellees James M. Trippon and J.M. Trippon & Company, CPA's Motion to Dismiss Appeal (Docket Entry No. 2) is **DENIED** as moot.

      **SIGNED** at Houston, Texas, on this ℐℎℎ day of June, 2013.

                                          SIM LAKE
                          UNITED STATES DISTRICT JUDGE